UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

KEVIN MARK KELSAY,

Plaintiff,

v.

Case No. 20-cv-1712-pp

WISCONSIN STATE PUBLIC DEFENDER,

Defendant.

---

**ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT (DKT. NO. 14), DISMISSING PLAINTIFF'S CLAIMS UNDER TITLE I OF THE ADA AND 42 U.S.C. §1981, REQUIRING PLAINTIFF TO FILE A SECOND AMENDED COMPLAINT AND DENYING AS MOOT DEFENDANT'S MOTION FOR MORE DEFINITE STATEMENT (DKT. NO. 14)**

---

On November 13, 2020, the plaintiff (representing himself) filed a complaint against the Wisconsin State Public Defender, alleging failure to accommodate a disability or perceived disability, unequal terms and conditions of employment and retaliation in violation of the Americans with Disabilities Act and the Wisconsin Fair Employment Act. Dkt. No. 1. On May 26, 2021, the defendant filed a motion to dismiss. Dkt. No. 7. The plaintiff filed a response to the defendant's argument that it had not been properly served, dkt. no. 11, and a more detailed amended complaint, dkt. no. 13. Two weeks later, the defendant filed a motion to dismiss the amended complaint, or, alternatively, a motion for a more definite statement. Dkt. No. 14. The plaintiff has not responded to the motion to dismiss the amended complaint.

## I. Amended Complaint

In the amended complaint, the plaintiff alleges that he was constructively discharged on April 1, 2021, after nearly a decade of working for the defendant as a legal secretary. Dkt. No. 13 at ¶1; p. 5, ¶14.[1] The plaintiff filed two charges of discrimination with the EEOC and received a dismissal and notice of rights for both. Id. at ¶¶2-10. The plaintiff worked in the defendant's Milwaukee office and still lives in Milwaukee; the defendant's headquarters are in Madison. Id. at p. 4, ¶¶15, 18. The amended complaint alleges that the plaintiff has "acknowledged disabilities," id. at p. 5, ¶11, and that the defendant "recognizes [him] as a disabled individual due to his medical conditions," id. at p. 6, ¶17. The original complaint—which has been superseded by the amended complaint—identified the plaintiff's disabilities as a January 2018 fractured hip/pelvis, diabetes and depression. Dkt. No. 1 at 4.

The plaintiff says that on December 11, 2017, he appealed to the Wisconsin Employment Relations Commission the defendant's determination to impose upon him a one-day suspension for disciplinary purposes. Id. at p. 5, ¶15. He asserts that WERC had 120 days in which to act on an appeal. Id. He claims, however, that while the appeal was pending, the plaintiff became "temporarily disabled due to a hip and pelvis fracture due to a slip and fall accident (not on the job) and was unable initially to further participate in the

[1] The plaintiff repeats paragraph numbers in his amended complaint. Pages one through four contain paragraphs numbered 1-19; pages five through eleven contain paragraphs numbered 11-31. If the court cites to a repeated paragraph, it will indicate the page at which that paragraph is located.

WERC [appeal] process." Id. at p. 5-6, ¶16. The plaintiff says that although he recovered during the 120-day appeal period, the defendant determined that the plaintiff's disability was grounds for extending the 120-day appeal period and it moved to adjourn the "court date" on the ground that the plaintiff's having become disabled was "his fault." Id.

The plaintiff asserts that on May 3, 2018, he filed a sur-reply in the appeal, alleging that the defendant was violating the ADA. Id. at p. 6, ¶17. He says that WERC granted the defendant's motion to extend the appeal period and scheduled a trial for August 24, 2018, which the plaintiff says was outside of the 120-day jurisdictional limits. Id. The plaintiff says that while he was waiting for this hearing, the defendant "began its campaign of retaliatory terrorism through the misuse and abuse of both the employee evaluation and disciplinary systems, practices which continued unabated until" the plaintiff resigned on April 1, 2021, "having been constructively discharged from his employment with" the defendant. Id. at p. 6, ¶18.

The amended complaint describes a series of events in chronological order. It asserts that in May of 2018, Bridget Krause, an attorney in the defendant's Milwaukee office, allegedly invited the defendant's former ten-year roommate (and "'protégé' of Krause") to attend a social event and hid that fact from the plaintiff. Id. at p. 6-7, ¶19. The plaintiff believes this was done to make the plaintiff appear "irrational or unstable," although the plaintiff says Krause was unsuccessful in her attempt. Id. He takes issue with an email allegedly sent by Krause to the management team:

> I invited her. She came with another Walworth PD. She sat away from him, left our tailgate before the food was out, and sat in her ticketed seat. [The plaintiff] didn't buy a ticket with our group. When he decided to sit with our group, she moved. He was terrible and sent her a threatening Facebook message after the game. She sent it to me. His behavior was embarrassing and appalling.

Id. The plaintiff alleges that the email concluded, "He is not well mentally." Id. The plaintiff argues that the email contained misrepresentations of fact and omitted details in an effort to "defame harass and retaliate against [him] for having consistently demanded that his rights as a disabled individual be respect, and was done by Krause with the knowledge, consent, and encouragement of Jennifer Bias, the agency's 'Trial Director.'" Id.

The plaintiff alleges that on August 7, 2018, he advised management that one of the attorneys for whom he was assigned to work was to open a file about an armed robbery in which the plaintiff had been a victim; the robbery was the basis for a probation revocation hearing for the perpetrator of the robbery. Id. at ¶20. The plaintiff says that he reported this to management as a conflict of interest. Id. He asserts that although management indicated the issue would be "handled," management opened a file internally, instead of sending the file to outside counsel "as is done 100% of the time when there is an internal conflict." Id. The plaintiff says he was notified of this fact by a co-worker, and he objected to a supervisor, who ordered that the file be sent to outside counsel. Id. The plaintiff asserts that there was "no rational basis" for management to have opened the file internally, "other than to 'get at' [him] while his disciplinary hearing was pending." Id.

The plaintiff alleges that on August 14, 2018, the day of the WERC hearing, the "star witness" of the hearing did not appear, and the hearing was rescheduled to August 29. Id. at ¶21. The plaintiff says he filed a disability discrimination complaint with the Equal Employment Opportunity Commission and the Wisconsin Equal Rights Division. Id.

The plaintiff asserts that on August 21, 2017, the "number two ranked attorney supervisor," Paige Styler, assisted a private process server in attempting to serve papers on the plaintiff "behind the secured area of the Milwaukee SPD Trial office." Id. at ¶22. The plaintiff says this was an "unprecedented and never repeated violation of employer/employee etiquette, common courtesy and right to be free of harassment while in the workplace." Id. He asserts that Styler failed to respond "to a demand that she notify the court deceived by the process server's false claims of having properly served [the plaintiff] in an attempt to prevent the perpetration of a fraud on the court;" he claims that these actions constituted retaliation for his assertion of his legal rights. Id.

The plaintiff claims that at the August 29, 2018 WERC hearing the hearing examiner exonerated him after hearing the case; he alleges, however, that Jennifer Bias had "already issued a directive via email in an attempt to terminate [the plaintiff's] employment as retaliation for his having pursued his disability rights and defended against unwarranted accusations—and to so terminate [the plaintiff] without going through the state mandated progressive disciplinary process—all in violation of both state and federal anti-retaliation

laws." Id. at ¶23. The plaintiff says that the directive to dismiss him without cause and without going through the progressive disciplinary process—was "later repeated a second time via email by Bias and never rescinded up to and including the day [the plaintiff] resigned, April 1, 2021." Id.

The plaintiff says that in early October 2018, he notified the defendant's "Affirmative Action Officer" by email of the "continued pattern of harassment and retaliatory conduct, to no avail." Id. at ¶24. He also wrote a cease-and-desist letter describing the conduct of Krause, the management team and Styler, which he alleges made the defendant "double[]/triple[] down in its retaliatory conduct;" he alleges that the defendant "shockingly" brought a disciplinary case against him for writing the cease-and-desist letter. Id. He says that when the defendant received the cease-and-desist letter, it issued a "Letter of Expectation" laying out rules that applied to him but no one else and "trampled on" on his constitutional rights to express himself, communicate with others and coordinate activities with fellow employees. Id. at ¶25.

The plaintiff says he filed his second EEOC complaint on October 18, 2018. Id. at ¶26.

The plaintiff says that he has suffered "lost back pay and benefits, lost front pay and benefits, lost future earnings, loss of reputation, lost job opportunities, humiliation, embarrassment, inconvenience, mental anguish, emotional distress, loss of enjoyment of life, attorney fees and costs, and other damages directly attributable to the retaliatory conduct" of the defendant. Id. at ¶30. The plaintiff says that the defendant, through its employees and agents,

intentionally, with malice and with deliberate indifference discriminated against him based on disabilities and perceived disabilities, failed to accommodate him and retaliated against him. Id. at 31.

## II. Defendant's Motion to Dismiss

### A. Failure to Timely Serve

In its motion to dismiss the amended complaint, the defendant urges the court to "consider" dismissing the lawsuit under Federal Rules of Civil Procedure 4(m) and 12(b)(5) because the plaintiff did not timely serve the *original* complaint within the ninety days required by Rule 4(m). Dkt. No. 15 at 4.

In response to the defendant's motion to dismiss the original complaint, the plaintiff filed a response explaining his delay in serving the defendant. Dkt. No. 11. As noted, he also filed an amended complaint. Dkt. No. 13. Finally, he filed an affidavit explaining that he had contacted the Eastern District of Wisconsin's clerk's office twice during the ninety-day period to inquire about the status of his motion to proceed without prepaying the filing fee and the availability of a summons; he averred that both times, the clerk's office acknowledged his motion to proceed without prepaying the filing fee, told him it had not yet been ruled upon and assured him that the ninety-day period was tolled while the plaintiff's motion was pending. Dkt. No. 12 at 1-2. The plaintiff asserted that when he called a third time in mid-March 2021, he was told by someone in the clerk's office that paying the fee would move the case along. Id. at 2. The plaintiff said that he "scraped together" and paid the fee on March 22,

2021. Id. The plaintiff stated that on March 26, 2021, he received the summons packet from the clerk's office and that he mailed the waiver of service packet to the defendant on March 27, 2021, "within 24 hours of receipt" from the clerk. Id. The defendant filed a signed waiver of service of summons on April 9, 2021. Dkt. No. 6.

The plaintiff is representing himself, and on November 13, 2020, he filed a motion to proceed without prepaying the filing fee. Dkt. No. 2. When a plaintiff asks to proceed without prepaying the filing fee, 28 U.S.C. §1915(e)(2) requires the court to dismiss the case if the court determines that it is "frivolous or malicious," that it fails to state a claim upon which relief may be granted, or that it seeks monetary relief from a defendant who is immune from suit. This means that the court must "screen," or review, the allegations in a complaint filed by a plaintiff who seeks to proceed without prepaying the filing fee. If the court concludes that the complaint is not frivolous and that it states a claim, 28 U.S.C. §1915(d) mandates that "[t]he officers of the court shall issue and serve all process, and perform all duties in such cases."

Between November 13, 2020 and March 2021, because the court did not screen the complaint or rule on the plaintiff's motion to proceed without prepaying the filing fee, it would have been premature for the plaintiff to serve the complaint (which appears to be pretty much what the clerk's office told the plaintiff when he called). The delay was this court's responsibility alone; its docket has been backed up for many reasons, not the least of which was the pandemic. Finally, rather than wait for the court to screen his complaint and

rule on his motion, the plaintiff "scraped up" and paid the filing fee; the court received the full fee on March 22, 2021. The clerks office issued the summons packet the same day, and the defendant filed its waiver of service eighteen days later.

The plaintiff did not fail to timely serve the defendant. The *defendant's* motion was premature. The court will deny the defendant's motion to dismiss for failure to timely serve under Rule 4(m).

B. Failure to State a Claim

The defendant has asked the court to dismiss the amended complaint for failure to state a claim under Rule 12(b)(6). The defendant acknowledges that it appears the plaintiff is bringing a claim for disability discrimination under Title I of the ADA, the Rehabilitation Act and 42 U.S.C. §1981. Dkt. No. 15 at 5, 6. The defendant argues, however, that the plaintiff's ADA and §1981 claims are barred because the defendant has Eleventh Amendment immunity. Id. at 6. It argues that the plaintiff has not stated a claim under §1981 because he has not alleged that he was discriminated against based on his race in the making and enforcing of contracts, and that §1981 does not create a private right of action. Id. at 6 n.10. The defendant argues that the plaintiff cannot state a claim under the Rehabilitation Act because he has not alleged that the defendant receives federal funds and because he has not stated facts that would support such a claim. Id. at 8-10. Finally, the defendant notes that the amended complaint references various other statutes and theories of recovery, id. at 11, and asserts that if the court is considering allowing the plaintiff to

proceed on those claims, it should order him to file a more definite statement under Fed. R. Civ. P. 8(a)(2) and 12(e). Id. at 12.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Rule 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." McReynolds v. Merrill Lynch & Co., 694 F.3d 873, 878 (7th Cir. 2012). The allegations in the complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiffs need not provide detailed factual allegations, but they must provide enough factual support to raise their right to relief above a speculative level. Twombly, 550 U.S. at 555. A claim must be facially plausible, meaning that the pleadings must "allow . . . the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft, 556 U.S. at 678 The claim must be described "in sufficient detail to give the defendant 'fair notice of what the ... claim is and the grounds upon which it rests.'" E.E.O.C. v. Concentra Health Servs., Inc., 496 F.3d 773, 776 (7th Cir. 2007) (quoting Twombly, 550 U.S. at 555).

      1.    *Eleventh Amendment*

In paragraph 31 of the amended complaint, the plaintiff alleges a "violation of Title 42 United States Code, Section 1981a, 12112, 12203, Title 29, United States Code, Section 794, and related sections and the disability

laws of the state of Wisconsin." Dkt. No. 13 at ¶31. Title I of the ADA prohibits employers from discriminating against a qualified individual with a disability with regard to hiring, discharging, compensation, and other employment actions. 42 U.S.C. §12112(a). Section 1981 "protects the right of all persons to make and enforce contracts regardless of race." Oliver v. Joint Logistics Managers, Inc., 893 F.3d 408, 411 (7th Cir. 2018). Aside from the fact that the plaintiff has not asserted facts that would support a §1981 claim, the plaintiff can't sue the defendant under Title I of the ADA or §1981 because of the Eleventh Amendment.

The jurisdictional bar of the Eleventh Amendment protects the state and its agencies. Kashani v. Purdue Univ., 813 F.2d 843, 845 (7th Cir.1987); see also McDonough Assoc., Inc. v. Grunloh, 722 F.3d 1043, 1049 (7th Cir. 2013) ("[T]he general rule is that private individuals are unable to sue a state in federal court absent the state's consent"). The Seventh Circuit specifically has held that the State Public Defender is an agency of the state and is immune from suit under the Eleventh Amendment. Smith v. LaFollette, No. 93-2639, 1994 WL 142877, at *7 (7th Cir. Apr. 20, 1994) ("The public defender is a state agency and is thus immune from suit under the Eleventh Amendment.").

The state's sovereign immunity can be limited in only a few circumstances: (1) when Congress abrogates the state's immunity pursuant to a valid exercise of power, Tennessee v. Lane, 541 U.S. 509, 533–34 (2004); (2) when the state participates in a federal program clearly conditioned on such a waiver, Edelman v. Jordan, 415 U.S. 651 (1974); or (3) by the state's consent to

suit in federal court, Lapides v. Bd. of Regents of the Univ. System of Ga., 535 U.S. 613 (2002). None of these exceptions apply to the plaintiff's claims under Title I of the ADA or §1981. Henige v. Bd. of Regents of Univ. of Wis. Sys., No. 20-CV-6, 2021 WL 510403, *9 (E.D. Wis. Feb. 11, 2021) ("Wisconsin has not consented to suit under Title I of the ADA"); Walker v. Bd. of Trustees of Univ. of Wis., 300 F. Supp. 2d 836, 849 (W.D. Wis. 2004) (plaintiffs may not sue state entities for damages under §1981 or §1983). The court will grant the defendant's motion to dismiss the ADA and §1981 claims.

2. *Rehabilitation Act*

To the extent the plaintiff seeks relief under the Rehabilitation Act, the Eleventh Amendment does not apply. See 42 U.S.C. §2000d-7 ("A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973 . . . ."). While the ADA and the Rehabilitation Act are similar, the Rehabilitation Act is "a condition on the receipt of federal funds" such that "the Rehabilitation Act is enforceable in federal court against recipients of federal largess." Stanley v. Litscher, 213 F.3d 340, 344 (7th Cir. 2000) (citations omitted). If the defendant receives money from the federal government, it is not immune from a claim under the Rehabilitation Act.

The defendant first asserts that the plaintiff has not alleged that it receives federal funds. Only actual recipients of federal funds can be sued under Section 504 of the Rehabilitation Act. See Grzan v. Charter Hosp. of Nw. Ind., 104 F.3d 116, 119 (7th Cir.1997) (citing United States Dept. of Transp. v.

Paralyzed Veterans of Am., 477 U.S. 597, 605 (1986)), abrogated on other grounds by Olmstead v. L.C., 527 U.S. 581 (1999)). But a plaintiff is not required to plead legal theories or recite all elements of a claim for relief. Judge Lynn Adelman of this district denied a motion to dismiss where it was unclear whether the plaintiff would be able to prove the receipt-of-federal-funds element of a Rehabilitation Act claim. Cox v. Froedert Health, Inc., No. 17-C-1370, 2018 WL 8264494, *1 (E.D. Wis. June 28, 2018). Judge Adelman explained that this argument was more appropriate for resolution at summary judgment than through a Rule 12(b)(6) motion to dismiss. Id.

The defendant also argues that the plaintiff has failed to allege that his disability or protected actions were the cause of the defendant's allegedly adverse actions. Id. at 8. The plaintiff's amended complaint identifies specific types of adverse actions: discrimination in terms and conditions, failure to accommodate, retaliation, and possibly, constructive discharge. Dkt. No. 13 at ¶31. The plaintiff has not, however, alleged that the defendant took the complained-of actions solely because of his disability.

To succeed on a claim of employment discrimination under the Rehabilitation Act, a plaintiff must prove that: (1) he is disabled within the meaning of the statute; (2) that he was otherwise qualified for the job in question; (3) that he was discharged or the subject of other adverse action solely because of his disability; and (4) that the employment program of which his job was a part received federal financial assistance. Felix v. Wis. Dept. of Transp., 828 F.3d 560, 568 (7th Cir. 2016) (citing See Novak v. Bd. of Trustees

of S. Ill. Univ., 777 F.3d 966, 974 (7th Cir. 2015); Jackson v. City of Chi., 414 F.3d 806, 810 (7th Cir. 2005); Branham v. Snow, 392 F.3d 896, 902 (7th Cir. 2004); Silk v. City of Chi., 194 F.3d 788, 798 n.6 (7th Cir. 1999)). The defendant does not dispute that the plaintiff has pled disability but argues that he has failed to plead the other elements, specifically that the defendant took an action solely because of the plaintiff's disability. For example, it is unclear how Krause's decision to invite the plaintiff's former roommate to a work event, Styler's act of assisting a process server to serve the plaintiff or even the initial failure to refer a file to an outside attorney were actions taken solely because of the plaintiff's disabilities. The plaintiff alleges that in 2018, Jennifer Bias issued a directive to fire the plaintiff, but he says that he resigned in 2021; he does not explain how the 2018 directive resulted in his 2021 "constructive discharge." He also refers to "overwhelming and unrelenting harassment" but doesn't describe the harassment, explain who committed it or explain when it occurred. Id. at ¶31. The amended complaint does not explain when the plaintiff requested a reasonable accommodation, what reasonable accommodation he requested or from whom he requested it.

The Seventh Circuit requires plausible allegations that the defendant experienced discrimination because of protected characteristics. See Kaminski v. Elite Staffing, Inc., 23 F.4th 774, 2022 WL 168260, *1 (7th Cir. Jan. 19, 2022). The plaintiff generally alleges that the defendant "began its campaign of retaliatory terrorism through the misuse and abuse" of evaluation and disciplinary systems (at some point during his employment). Dkt. No. 13 at p.

6, ¶18. The plaintiff alleges that the "agency doubled/tripled down in its retaliatory conduct and shockingly brought a disciplinary case against [the plaintiff] for authoring a cease and desist letter." Id. at ¶24. He refers to an undated "Letter of Expectation" that "trampled" on his rights but he sheds no further light on what the defendant said or did. Id. at ¶25. Arguably, the plaintiff has alleged that the defendant discriminated or retaliated against him through evaluations, discipline and/or the Letter of Expectation. The amended complaint contains some allegations that could give rise to a Rehabilitation Act claim *if* the defendant received federal funding and *if* the plaintiff can explain the disabilities from which he suffered, the actions taken against him as a result of those disabilities, who took the actions, when the actions were taken and what reasonable accommodations he requested from whom and when. See Swanson v. Citibank, N.A., 614 F.3d 400, 404–05 (7th Cir. 2010). But more information is necessary.

The court notes that the plaintiff has not responded to the motion to dismiss his amended complaint, but that alone is not a basis for dismissing the complaint. Marcure v. Lynn, 992 F.3d 625, 631 (7th Cir. 2021). The court will give the plaintiff the opportunity to file a second amended complaint, omitting the dismissed claims under Title I of the ADA and §1981, and clarifying the basis for his allegations of discrimination, retaliation, failure to accommodate or other alleged violations of the Rehabilitation Act. The court will include with this order another blank amended complaint form. The plaintiff must write "Second" above the words "Amended Complaint" at the top of the page.

If the plaintiff has reason to believe that the defendant receives federal funding, he must explain that in the second amended complaint. If he wishes to plead any claims other than violations of the Rehabilitation Act, he must allege sufficient facts to provide the defendant fair notice of those claims and the grounds on which they rest; he cannot simply list statutes and legal theories.

C. Motion for More Definite Statement

To the extent that the plaintiff seeks to bring a claim under something other than the ADA, §1981 or the Rehabilitation Act, the defendant asks the court to require the plaintiff to file a more definite statement in compliance with Rule 8(a)(2) and 12(e). Dkt. No. 15 at 12. The defendant says this information is necessary to allow the defendant to respond and raise defenses such as Wisconsin's notice of claim statute, the Eleventh Amendment, statutes of limitations and the failure to exhaust administrative remedies. Id. at 13.

The court agrees, but has determined that the plaintiff must file a second amended complaint in response to the court's ruling on the motion to dismiss. The court will deny as moot the motion for a more definite statement.

## III. Conclusion

The court **GRANTS** in part and **DENIES** in part the defendant's motion to dismiss. Dkt. No. 14.

The court **ORDERS** that the plaintiff's claims under Title I of the ADA and 42 U.S.C. §1981 are **DISMISSED** because the defendant is protected by

Eleventh Amendment immunity and because the plaintiff has not stated a claim under 42 U.S.C. §1981.

The court **ORDERS** that if the plaintiff wishes to proceed with this lawsuit, he must file a second amended complaint that complies with this order in time for the court to *receive* it by the end of the day on **April 15, 2022**. The second amended complaint must not include ADA or §1981 claims. The second amended complaint will supersede—take the place of—any prior complaints and renders any prior complaints void. Flannery v. Recording Indus. Ass'n of Am., 354 F.3d 632, 638 n.1 (7th Cir. 2004). That means that the second amended complaint must be complete in itself; it may not refer the court back to facts alleged in prior complaints. If the court does not receive a second amended complaint by the end of the day on **April 15, 2022**, the court will dismiss the case on the next business day without further notice or hearing.

The court **DENIES AS MOOT** the defendant's motion for a more definite statement. Dkt. No. 14.

Dated in Milwaukee, Wisconsin this 25th day of March, 2022.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**